**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE**

| | | |
|---|---|---|
| ROBERT CASTLE, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: _____ |
| | ) | |
| 3M COMPANY f/k/a MINNESOTA | ) | |
| MINING AND MANUFACTURING | ) | **DEFENDANT 3M COMPANY'S** |
| COMPANY, a foreign corporation; | ) | **NOTICE AND CERTIFICATE** |
| | ) | **OF REMOVAL** |
| AMERICAN OPTICAL CORPORATION, | ) | |
| a foreign corporation; | ) | |
| | ) | |
| MINE SAFETY APPLIANCES | ) | |
| COMPANY, LLC a foreign limited | ) | |
| liability company, f/k/a MINE SAFETY | ) | |
| APPLIANCES COMPANY, a foreign | ) | |
| corporation; | ) | |
| | ) | |
| MINE SERVICE COMPANY, INC., a | ) | |
| Kentucky corporation; and | ) | |
| | | |
| KENTUCKY MINE SUPPLY COMPANY, | | |
| a Kentucky corporation | | |

<u>**NOTICE OF REMOVAL**</u>

3M Company gives notice of removing this case from the Martin Circuit Court to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville. This Court is the proper place to remove the state-court case (cause number 17-CI-00199), because this District and Division include Martin County, where the case is pending.[1]

_____

[1]    28 U.S.C. § 1441(a). The state court record is attached as Exhibit 1.

4861-5200-6930, v. 1

## **INTRODUCTION**

This removal concerns a flagrant pattern and practice of fraudulent joinder. Plaintiffs' actions in this and other cases show they have fraudulently joined two in-state defendants in bad faith to defeat removal.

The three Plaintiffs in this case are among over 2,200 coal-miner plaintiffs who, as of late last year, had claims pending against 3M in Kentucky state and federal courts.[2] They contend they wore 3M's and other manufacturers' respirators to prevent black lung (also known as coal workers' pneumoconiosis, or CWP), but still developed black lung.[3]

Almost without exception, these plaintiffs have sued two Kentucky corporations, Mine Service Company (MSC) and Kentucky Mine Supply Company (KMSC).[4] The plaintiffs uniformly allege that, despite Kentucky's innocent-seller or "Middleman" statute's provision of immunity,[5] the Supplier Defendants knew or should have known that the respirators they allegedly sold were defective. But these thousands of plaintiffs have done *nothing* to pursue their claims against the Supplier Defendants.

---

[2]     Exhibit 2 (chart summarizing pending respirator lawsuits against 3M as of December 1, 2021).

[3]     This case has no spousal plaintiffs.

[4]     MSC and KMSC are referred to collectively as the "Supplier Defendants." Some plaintiffs have also joined other non-diverse suppliers. *See, e.g.*, *Brian Adams et al. v. 3M Co. et al.*, No. 7:21-cv-00082-REW-CJS (E.D. Ky. Oct. 25, 2021) [Doc. 1-1 at 257 (¶¶ 12-17)].

An exception that proves the rule is *Roark v. 3M Co.*, where this Court recently granted summary judgment based on the statute of limitations. *Roark v. 3M Co.*, --- F. Supp. 3d ---, 2021 WL 5410887, at *5 (E.D. Ky. 2021). 3M was the only defendant and removed based on diversity of citizenship.

[5]     KRS 411.340.

The pattern is clear: plaintiffs name and serve the Supplier Defendants, but then ignore them. Plaintiffs never seek discovery from the Supplier Defendants, depose their employees, or ask other deponents about them.

In 2018, when about 760 plaintiffs had pending claims against 3M,[6] this Court gave "fair warning" that "as these cases develop, it would raise an eyebrow here as to what's happening with these suppliers."[7] Despite that "fair warning," plaintiffs' counsel have continued bringing lawsuit after lawsuit against the Supplier Defendants, without engaging in meaningful discovery on those claims.

This case is par for the course. Fact discovery for the lead trial Plaintiff, Milton Marcum, concluded on February 4, 2022, with a few fact-witness depositions taken by agreement after that date. The last of those depositions occurred on February 22. Marcum has had since November 2017 to build a case against the Supplier Defendants. He did nothing. He never requested documents or other discovery from them, he never sought to depose them or their employees, his seven experts never mentioned them, and he never disclosed evidence against them. The other Plaintiffs, Robert Castle and James McCoy, likewise have done nothing, in over four years, to take discovery from or about the Supplier Defendants.

Time has proven that this Court was right in 2018 to be "concerned" about "what's happening with these suppliers" "as these cases develop."[8] It is now time for this Court to take the next step. The plaintiffs' complete failure to engage in discovery

---

[6]     Exhibit 3 (chart summarizing pending respirator lawsuits against 3M as of January 1, 2018).

[7]     Exhibit 4 (Transcript of June 15, 2018 hearing in *Williams v. 3M Co.*, No. 7:18-cv-0063) at 32.

[8]     *Id.*

3

involving the Supplier Defendants, in this and over 2,000 pending cases, shows that the Supplier Defendants have been fraudulently joined.

## PROCEDURAL HISTORY

This action was filed in Martin Circuit Court on November 30, 2017. Counsel joined three Plaintiffs: Robert Castle, Milton Marcum, and James McCoy.[9] Plaintiffs named three respirator manufacturers as Defendants—3M, American Optical (AO), and Mine Safety Appliances (MSA)—and the two Supplier Defendants.[10]

### Milton Marcum

After the initial pleadings, the case sat dormant until Plaintiffs eventually responded to 3M's December 2017 written discovery in October 2019.[11] Marcum was deposed in June 2020.[12] Shortly thereafter, Marcum voluntarily dismissed AO with prejudice.[13]

In January 2020, Plaintiffs' counsel sought to consolidate Marcum's case with some of the approximately 96 other plaintiffs whom counsel then represented before the state circuit judge.[14] Plaintiffs' counsel proposed jointly trying groups of plaintiffs.[15] The court denied that request, because discovery was largely incomplete.[16]

---

[9]     Complaint (part of state-court record) at ℙℙ 1-3.

[10]    Complaint at ℙℙ 4-8.

[11]    Exhibit 5-A (3M's May 7, 2019 Motion to Compel); Exhibit 5-B (Notice of Service).

[12]    Exhibit 5-C (Excerpts from June 23, 2020 Deposition of Milton Marcum) ("Marcum Dep").

[13]    Exhibit 5-D (June 25, 2020 Agreed Order of Dismissal).

[14]    Exhibit 5-E (Jan. 16, 2020 Motion for Trial Dates for Consolidated Cases).

[15]    *Id.* at 7.

[16]    Exhibit 5-F (Feb. 18, 2020 Order).

4861-5200-6930, v. 1

In October 2020, Plaintiffs' counsel again asked to consolidate groups of plaintiffs for trial.[17] Although the state court ordered the parties to work up five plaintiffs for individual trials, none were in this case.[18]

In November 2021, Plaintiffs' counsel moved to set Marcum's case for trial in March 2022.[19] 3M opposed that, because discovery remained largely outstanding, and Plaintiffs' counsel had never conferred about selecting cases for trial.[20] Over that objection, the state court proposed setting Marcum's claims for an individual August 2022 trial.[21]

In December 2021, 3M filed a motion for leave to file a third-party complaint, which Marcum opposed.[22] The motion was granted,[23] and 3M is in the process of serving third-party complaints on Marcum's former employers.

Also in December, Marcum agreed to voluntarily dismiss his claims against MSA with prejudice, through an agreed order of dismissal.[24] The state court has not yet

---

[17]    Exhibit 5-G (Oct. 16, 2020 Plaintiffs' Submission of Coal Miners for Consolidated Trials).

[18]    Exhibit 5-H (Jan. 14, 2021 Order); Exhibit 5-I (Apr. 1, 2021 Order).

[19]    Exhibit 5-J (Nov. 17, 2021 Plaintiffs' Motion Regarding Trial Dates).

[20]    Exhibit 5-K (Dec. 1, 2021 Response to Plaintiffs' Motion Regarding Trial Dates).

[21]    *See* Exhibit 5-L (Order tendered Dec. 16, 2021). The state court has not yet entered this order.

[22]    Exhibit 5-M (Dec. 20, 2021 Motion for Leave to File Third-Party Complaint).

[23]    Exhibit 5-N (Feb. 2, 2022 Order).

[24]    Exhibit 5-O (Proposed Agreed Order of Voluntary Dismissal of Plaintiff Milton Marcum as to Defendant Mine Safety Appliances Company, LLC, tendered Dec. 30, 2021).

4861-5200-6930, v. 1

entered this agreed order. Fact discovery closed on February 4, 2022,[25] but the parties agreed to complete several remaining fact-witness depositions by February 22.

Marcum's claims are time-barred, and 3M intends to move for summary judgment. Marcum insists he wore 3M's respirators for decades, to protect his lungs from dust.[26] Marcum was diagnosed with black lung in 2015;[27] and he sought governmental black-lung benefits that year, certifying under penalty of perjury that he had "shortness of breath, fatigue, [and] night sweats" "due to pneumoconiosis (Black Lung) or other respirator or pulmonary disease resulting from coal mine employment."[28] Yet he admits he never investigated why he had black lung, despite his supposed respirator use, and he didn't sue 3M until November 2017, two years after his diagnosis and sworn application.[29] As this Court has consistently concluded on analogous facts, Kentucky's one-year statute of limitations bars Marcum's claims.[30]

### Robert Castle and James McCoy

---

[25]    Exhibit 5-P (Feb. 3, 2022 Scheduling Order).

[26]    Marcum Dep. 74:5-9, 224:12-19, 305:20-22.

[27]    Exhibit 6-A (Nov. 13, 2015 B-Read by Dr. Kathleen DePonte, finding "[p]arenchymal [a]bnormalities [c]onsistent with [p]neumoconiosis" and diagnosing CWP, category 1/1, Bates labeled WC000148).

[28]    Exhibit 6-B (Oct. 20, 2015 Miner's Claim for Benefits, Bates labeled WC000127-130).

[29]    Marcum Dep. 225:8-15.

[30]    *See* Roark, --- F. Supp. 3d ---, 2021 WL 5410887, at *5; *Adams v. 3M Co.*, No. 12-61-ART, 2013 WL 3367134, at *6 (E.D. Ky. July 5, 2013); *Boggs v. 3M Co.*, No. 11-cv-57-ART, 2012 WL 3644967, at *2-7 (E.D. Ky. Aug. 24, 2012), *aff'd*, 527 F. App'x 415 (6th Cir. 2013).

4861-5200-6930, v. 1

The other two Plaintiffs, Robert Castle and James McCoy, have been deposed.[31] Shortly thereafter, McCoy and Castle each voluntarily dismissed AO with prejudice.[32]

But their cases have not been otherwise worked up for trial. Plaintiffs' counsel has instead chosen to advance Marcum's claims for trial, proposing to consolidate Marcum with Darrell Bowen (a plaintiff in the companion removed case).

As with Marcum, both Castle's and McCoy's claims are time-barred, and 3M intends to move for summary judgment. Both insist they wore 3M's respirators for decades, to prevent black lung caused by coal mine dust inhalation.[33] Both were diagnosed with black lung,[34] and both filed sworn federal black-lung benefits applications, relying on their diagnoses (both in 2012).[35] Yet, like Marcum and so many other respirator plaintiffs, they never investigated why they had black lung,[36] and they

---

[31]    Exhibit 5-Q (Excerpts from June 4, 2020 Deposition of James McCoy) ("McCoy Dep."); Exhibit 5-R (Excerpts from July 29, 2020 Deposition of Robert Castle) ("Castle Dep.").

[32]    Exhibit 5-S (McCoy:  June 4, 2020 Agreed Order of Dismissal); Exhibit 5-T (Castle: July 29, 2020 Agreed Order of Dismissal).

[33]    Castle Dep. 100:14-25, 130:6-25, 268:11-18; McCoy Dep. 28:5-30:22.

[34]    Exhibit 6-C (Castle:  Oct. 20, 2011 B-Read by Dr. Michael Alexander, finding "[p]arenchymal [a]bnormalities [c]onsistent with [p]neumoconiosis" and diagnosing CWP, category 1/2, Bates labeled ALAM0009)); Exhibit 6-D (McCoy:  Aug. 14, 2012 B-Read by Dr. Mohammed Ranavaya, finding "[p]arenchymal [a]bnormalities [c]onsistent with [p]neumoconiosis" and diagnosing CWP, category 0/1, Bates labeled USDOL 000087).

[35]    Exhibit 6-E (Castle's Oct. 29, 2012 Miner's Claim for Benefits, Bates labeled CASTLE, ROBERT—000741-744); Exhibit 6-F (McCoy's July 30, 2012 Miner's Claim for Benefits, Bates labeled USDOL 000115-119).

[36]    Castle Dep. 268:19-23; McCoy Dep. 249:2-19.

delayed filing suit against 3M until 2017. The one-year statute of limitations bars their claims.[37]

## GROUNDS FOR REMOVAL

Removal is based on federal diversity jurisdiction, 28 U.S.C. § 1332; the supplemental jurisdiction statute, 28 U.S.C. § 1367; the general removal statute, 28 U.S.C. § 1441; the doctrine of fraudulent joinder; and, to the extent separately necessary, bad faith under 28 U.S.C. § 1446(c)(1).

No time limit prohibits removal. Section 1446(c)(1)'s one-year limit for diversity removals doesn't apply when fraudulent joinder is established. Even if it did, the complete failure to build a case against the Supplier Defendants shows bad faith, triggering the statutory exception to the one-year time limit.

**I.    This Court has jurisdiction over Plaintiffs' claims against the Respirator Defendants and 3M's claims against the Third-Party Defendants.**

Diversity jurisdiction exists under 28 U.S.C. § 1332(a). The Plaintiffs are completely diverse from 3M and MSA, and the amount in controversy plausibly exceeds $75,000. Supplemental jurisdiction under 28 U.S.C. § 1367 covers the claims against the Third-Party Defendants.

---

[37] *See* Roark, --- F. Supp. 3d ---, 2021 WL 5410887, at *5; *Adams*, 2013 WL 3367134, at *6; *Boggs*, 2012 WL 3644967, at *2-7.

4861-5200-6930, v. 1

**A. The Plaintiffs and Respirator Defendants are completely diverse.**

All three Plaintiffs are Kentucky domiciliaries.[38] Defendant 3M is a Delaware corporation with a Minnesota principal place of business.[39] Defendant MSA is an LLC that, for diversity purposes, is a citizen of Pennsylvania.[40]

**B. The amount in controversy plausibly exceeds $75,000.**

"[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."[41]

In examining the amount in controversy, the Court should consider how numerous and serious the categories and nature of the damages that the Complaint asserts are.[42] The Court should also consider punitive damages when pleaded: as Kentucky permits punitive damages, the Court should include at least a single-digit multiplier in the jurisdictional math.[43]

The amount-in-controversy requirement is plausibly satisfied. Per Kentucky court rule, the Complaint does not state the amount of damages sought. But Plaintiffs

---

[38]    Complaint at ¶¶ 1-3.

[39]    Exhibit 5-U (3M's Answer).

[40]    Exhibit 7 (MSA's Response to Court's November 4, 2020 Order, *Mullins v. Mine Safety Appliances Co., LLC*, No. 7:20-cv-00136-REW-EBA (E.D. Ky. Nov. 13, 2020) [Doc. 6 at 1]) (discussing LLC membership and representing that MSA "is a citizen of Pennsylvania" for diversity purposes).

[41]    *Dart Cherokee Basin Oper. Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

[42]    *E.g.*, *Hayes v. Equity Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

[43]    *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005); KRS 411.184.

4861-5200-6930, v. 1

claim compensatory damages for medical expenses and past and future pain and suffering; they also seek punitive damages.[44] Assuming even a 2:1 punitive damages ratio, compensatory damages would need to exceed just $25,000 to reach the overall threshold. Just one of the compensatory categories listed above can easily reach that threshold in a personal-injury case.

Verdicts in similar respirator lawsuits with just one or two plaintiffs have also consistently exceeded $75,000. In *Couch v. MSA*, for example, a Knott County jury awarded a single plaintiff $8 million total (including $4 million in compensatory damages).[45] Another example is *Cox v. 3M*, where a Knox County jury awarded $67.5 million ($62.5 in punitive damages) to two plaintiffs in a similar respirator lawsuit.[46]

Given those previous outcomes, the amount in controversy plausibly exceeds $75,000. Should Plaintiffs contest that allegation, 3M will submit additional evidence.[47]

### C. The Third-Party Defendants' citizenships are immaterial; the Court has supplemental jurisdiction.

As discussed, 3M impleaded Marcum's former employers as Third-Party Defendants, and is in the process of serving them with third-party complaints. The employers do not defeat diversity jurisdiction or removal. The Court has supplemental jurisdiction over 3M's claims against them.

---

[44]    Complaint at ¶ 44, *ad damnum* (p. 14).

[45]    No. 10-CI-155 (Knott Circuit Court). WYMT, Knott County man awarded 8-million-dollar judgment in dust mask lawsuit, https://www.wymt.com/content/news/Knott-County-man-awarded-8-million-dollar-judgment-in-dust-mask-lawsuit--370562261.html (last accessed March 4, 2022).

[46]    Exhibit 8 (Judgment in *Cox v. 3M*) (Knox Circuit Court, No. 16-CI-0100).

[47]    *See Dart Cherokee*, 574 U.S. at 89.

A non-diverse third-party defendant's presence does not defeat complete diversity that otherwise exists between the plaintiffs and the defendants.[48] That is because Rule 14 claims against third parties "generally do not require an independent jurisdictional basis. Instead, such claims fall within the court's supplemental jurisdiction if the impleaded [third-party] defendant's actions share a 'common nucleus of operative fact' with the case already before the court."[49]

Similarly, the Supreme Court has also reinforced that "defendant" as used in 28 U.S.C. § 1441(a) does not include third-party defendants.[50] The "'civil action . . . of which the district cour[t]' must have jurisdiction is the action as defined by the plaintiff's complaint,' and the "'defendant' to that action is the defendant to that complaint."[51] So, for example, the Sixth Circuit concluded that a third-party complaint brought "solely to allow [the defendants] to seek an instruction apportioning fault to the [third-party defendant] if the evidence warranted," did not thwart diversity jurisdiction, even though the third-party defendant was not diverse from the plaintiff.[52] District courts routinely apply this rule.[53]

3M sought leave to file a Third-Party Complaint against Marcum's former employers so they could be apportioned fault.[54] Claims against the former employers

---

[48] *Grimes v. Mazda N. Am Ops.*, 355 F.3d 566, 572 (6th Cir. 2004).

[49] *Id.*

[50] *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748-49 (2019).

[51] *Id.* at 1748 (all alterations in original; quoting 28 U.S.C. § 1441(a)).

[52] *Grimes*, 355 F.3d at 573.

[53] *See, e.g.*, *Affordable Constr. Servs., Inc. v. Auto-Owners Ins. Co.*, No. 1:20-cv-01016-STA-jay, 2020 WL 1955267, at *2-3 (W.D. Tenn. Apr. 23, 2020) (relying on *Grimes* to deny motion to remand).

[54] Exhibit 5-M at 2.

plainly share a common nucleus of operative fact with Marcum's claims, because the former employers controlled the mine conditions in which Marcum worked. Common questions include whether the former employers complied with their federal obligation to limit coal mine dust, and what respirator training they provided Marcum.

This standard Kentucky practice to allow for a potential apportionment instruction does not affect diversity jurisdiction.[55]

## II.    Marcum fraudulently joined the Supplier Defendants.

The grounds for fraudulent joinder became apparent after the last fact deposition ended on February 22, 2022. At that point, it was clear that Marcum and his counsel had elected not to pursue *any* discovery to substantiate his claim that the Supplier Defendants caused his alleged injury. Nor had Marcum disclosed witnesses or other evidence connecting the dots between the Supplier Defendants and any injury. And, because fact discovery has closed, he cannot do so going forward.

That all confirms that Plaintiffs and their counsel have run the standard playbook for the Supplier Defendants in respirator cases. Having filed this notice of removal within 30 days after it received the required "solid and unambiguous information that the case is removable," 3M has timely removed under 28 U.S.C. § 1446(b)(3).[56]

---

[55]    *Grimes*, 355 F.3d at 571-73.

[56]    *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 364 (6th Cir. 2015). The transcript of the last deposition, confirming that Marcum had not developed a case against the Supplier Defendants, constitutes an "other paper" as used in this subsection. 28 U.S.C. § 1446(b)(3); *see Mesa*, 779 F.3d at 365 ("[A]s a general matter, 'documents such as deposition transcripts . . .' may constitute 'other papers' under § 1446(b)(3) (quoting Charles Alan Wright & Arthur R. Miller, 14C *Federal Practice and Procedure* § 3731 (4th ed. 2009)). 3M further discusses this below.

**A. Fraudulent joinder exists where the plaintiff lacks a colorable claim against the non-diverse defendant.**

Dating to the nineteenth century,[57] fraudulent joinder is an exception to at least two conditions of removal: (1) if based on diversity, the parties must be completely diverse; and (2) all defendants must consent.[58] Fraudulent joinder prevents plaintiffs (and their counsel) from using a sham claim against a non-diverse defendant to avoid federal court.

"A defendant is fraudulently joined if it is clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law."[59] Courts describe the fraudulent-joinder inquiry as whether the plaintiff has a "colorable" claim against the non-diverse defendant, or whether "a colorable basis [exists] for predicting that a plaintiff may recover against [the non-diverse] defendant."[60] In evaluating fraudulent joinder, courts look beyond the pleadings to "consider summary

---

[57] Charles Alan Wright & Arthur R. Miller, 14C Fed. Prac. & Proc. § 3723.1 n.1 (Rev. 4th ed. Apr. 2021 update) ("Wright & Miller") (collecting cases). Subsequent references to "Wright & Miller" are to this current edition.

[58] *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564 (6th Cir. 2015) (Section "1446(b)(2) only requires the consent of *properly* joined defendants; the consent of a defendant who has been *fraudulently* joined is not necessary."); *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (Although "a district court lacks subject matter jurisdiction in a diversity action where the parties are not completely diverse," "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." (citations omitted)).

[59] *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432-33 (6th Cir. 2012) (alteration, internal quotation marks, and citation omitted); *see also, e.g.*, *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*) ("[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.").

[60] *Chambers*, 796 F.3d at 564; *Casias*, 695 F.3d at 433 (alteration, internal quotation marks, and citation omitted).

4861-5200-6930, v. 1

judgment evidence" and determine "whether there are undisputed facts that negate the claim."[61] Factual controversies are resolved in the plaintiff's favor, "but only when there is an actual controversy"; courts do not "in the absence of any proof, assume that the [plaintiff] could or would prove the necessary facts" to negate fraudulent joinder.[62]

### 1. A claim is not colorable when the plaintiff fails to engage in any meaningful discovery about it.

Fraudulent joinder exists when the plaintiff elects not to pursue a colorable claim against the non-diverse defendant. Take, for example, the Western District's decision in *Bennett v. Ford Motor Company*. There, a truck purchased from a Ford dealer caught fire, and the plaintiffs sued Ford and the dealer.[63] After the dealer obtained summary judgment, Ford removed, asserting the plaintiffs had fraudulently joined the dealer.[64]

The court concluded removal was proper.[65] The plaintiffs had made "little attempt, if any, to develop a case against [the dealer]; no direct attempt having been undertaken to determine [the dealer's] knowledge of the alleged defect."[66] That was true even though the plaintiffs had requested Ford's correspondence with dealers about the alleged defect.[67] The court determined that this minimal effort was inadequate to show "a reasonable basis existed for Plaintiffs' claims against [the dealer]," necessary to

---

[61]    *Casias*, 695 F.3d at 433 (internal quotation marks and citation omitted).

[62]    *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000) (emphasis and citation omitted).

[63]    *Bennett v. Ford Motor Co.*, No. 5:07CV-115-R, 2007 WL 4561281, at *1 (W.D. Ky. Dec. 21, 2007).

[64]    *Id.*

[65]    *Id.* at *2-3.

[66]    *Id.* at *3.

[67]    *Id.*

overcome the presumptive immunity KRS 411.340 affords "Middlemen" suppliers and dealers.[68]

Fraudulent joinder existed even though the plaintiffs had sued a dealer that Ford had authorized to sell its products, and despite their insistence that "discovery had to occur before a decision as to [the dealer's] necessity to the action could be contemplated."[69] The plaintiffs' litigation choices prevented them from putting "forth any facts supporting the claim against the nondiverse defendant."[70] *Hardy v. Ajax Magnathermic Corp.* is to the same effect. There, "[i]n four years Plaintiffs took virtually no discovery and had no facts to have any reasonable basis for a claim against" the non-diverse defendant.[71] This demonstrated fraudulent joinder.

### 2. Broader circumstances inform fraudulent joinder.

Broader circumstances also matter for fraudulent joinder.[72] That one plaintiff's failure to engage in meaningful discovery shows fraudulent joinder becomes clearer when hundreds of similarly situated plaintiffs also fail to pursue their claims against the same non-diverse defendants.

---

[68]    *Id.* (citing *Alexander v. Elec. Data Sys.*, 13 F.3d 940, 949 (6th Cir. 1994)).

[69]    *See id.* at *1, *3.

[70]    *Id.*

[71]    122 F. Supp. 2d 757, 791 (W.D. Ky. 2000).

[72]    *See, e.g.*, *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16md2734, 2018 WL 6258903, at *6-7 (N.D. Fla. Nov. 8, 2018) (no fraudulent joinder where "there [was] no pattern of individual plaintiffs bringing suit against [a non-diverse defendant] and then failing to follow through with discovery"); *Kent v. Bank of Am., N.A.*, Civ. No. 11-2315, 2012 WL 3582759, at *16 (D. Minn. 2012) (plaintiffs' counsel's pattern and practice showed nondiverse defendants joined solely to defeat jurisdiction); *In re Diet Drugs*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (nondiverse pharmacies fraudulently joined where mass pharmaceutical litigation plaintiffs routinely voluntarily dismissed them after one-year removal time limit passed).

For example, a non-diverse defendant was fraudulently joined when many other plaintiffs bringing the same type of products-liability claims had never "propounded meaningful discovery" on that defendant, and had frequently "dismissed claims" against it.[73] When the court asked, plaintiffs' counsel could identify "no instance in which any of the numerous [tort] plaintiffs have propounded meaningful discovery on" the non-diverse defendant, "even though some cases have gone to trial."[74] That "failure to seek discovery include[d] other cases brought by Plaintiffs' counsel."[75] The pattern of dismissing the non-diverse defendant was also telling.[76]

Likewise, fraudulent joinder was shown where "none of the nationwide . . . plaintiffs' counsel . . . ha[d] made any effort to prosecute a case against" non-diverse defendants, "other than naming" them "as defendants."[77] When the same counsel litigates the same claims identically on behalf of two—let alone hundreds of—plaintiffs, what follows for the one follows for the other.

### B. Marcum never pursued discovery against the Supplier Defendants, showing he fraudulently joined them.

Discovery exists so plaintiffs can substantiate their claims at trial. Marcum's complete failure to engage in discovery involving the Supplier Defendants shows he fraudulently joined them.

---

[73] *In re Zoloft (Sertraline Hydrocholoride) Prods. Liab. Litig.*, 257 F. Supp. 3d 717, 720-21 (E.D. Pa. 2017).

[74] *Id.* at 720.

[75] *Id.*

[76] *Id.* at 720-21.

[77] *Long v. Wyeth*, No. 6:03-cv-421-Orl-31JGG, 2003 WL 25548421, at *2 (M.D. Fla. May 13, 2003).

4861-5200-6930, v. 1

**1. To prevail against the Suppliers, Marcum must overcome Middleman immunity and prove they supplied the respirators he says he used.**

Marcum asserts the same claims (negligence and strict liability) against each Supplier Defendant.[78] But as *Bennett* discusses,[79] mere suppliers are generally immune to those claims under KRS 411.340 (often called the "Middleman" statute). The Middleman statute's "purpose" is "to protect those who merely sell the products" from liability, when the product manufacturer is also sued.[80] A "wholesaler, distributor, or retailer who distributes or sells a product" in its original condition is not "liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer."[81] Marcum must overcome Middleman immunity.

Marcum must also prove causation to prevail against the Supplier Defendants. As in any tort claim, he must prove that the respirators the Supplier Defendants allegedly sold were the respirators he allegedly wore.[82]

---

[78]    Complaint at ¶¶ 30-36.

[79]    2007 WL 4561281, at *2-3.

[80]    *Parker v. Henry A. Petter Supply Co.*, 165 S.W.3d 474, 477 (Ky. Ct. App. 2005).

[81]    KRS 411.340. Another requirement is that the "manufacturer" of the product is "identified and subject to the jurisdiction of the court." *Id.* That is undisputed here.

[82]    *Huffman v. SS. Mary & Elizabeth Hospital*, 475 S.W.2d 631, 633 (Ky. 1972) ("[C]laims of negligence, breach of implied warranty and strict liability . . . have one common denominator, which is that causation must be established."); *see Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001) (non-diverse pharmacies fraudulently joined where complaint failed to allege "that any of the proposed representative plaintiffs themselves . . . purchased or were otherwise supplied OxyContin *by the defendant pharmacies*").

But Marcum admits he lacks personal knowledge or evidence to make that critical connection. Marcum testified that he obtained the respirators from boxes his employers provided.[83] He does not know where his employers purchased those respirators.[84] And, when asked to produce all "documents that support your contention that any Plaintiff used any respirator that was supplied or furnished by any supplier of respiratory protection equipment," he admitted he "has no such documents."[85]

Marcum's only path to establishing causation was to discover evidence that the Supplier Defendants sold the type of respirators he allegedly used to his mine employers. Otherwise, the Supplier Defendants' acts could not be a "substantial factor" in causing his alleged injury.[86]

### 2. Marcum never tried to connect the Supplier Defendants to the respirators he says he used.

Because one element of a "colorable claim"[87] against the Supplier Defendants is that they caused Marcum's alleged injury, logically Marcum would have done *something* to develop evidence of who sold the respirators he says he used to his employers. Or, if Marcum already had that evidence, logically he would have disclosed it.

But Marcum did not engage in *any* discovery relating to the Supplier Defendants. He never:

---

[83]    Marcum Dep. 51:10-1, 53:12-22.

[84]    Marcum Dep. 85:12-23.

[85]    Exhibit 5-V (Marcum's Oct. 24, 2019 Responses to Joint RFPs) at 13 (RFP No. 43).

[86]    *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 92 (Ky. 2003) (alleged negligence "must also be a substantial factor in bringing about the plaintiff's harm," meaning "defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause" (quoting Restatement (Second) of Torts § 431 cmt. a)).

[87]    *Chambers*, 796 F.3d at 564; *Casias*, 695 F.3d at 433 (alteration, internal quotation marks, and citation omitted).

- served a single interrogatory on them;
- asked them to produce a single document;
- asked them to admit anything;
- sought to depose them or their employees;
- offered witnesses (fact or expert) to testify against them; or
- tried to develop evidence against them, including in the 10 depositions.

Nor did Marcum disclose evidence, somehow obtained outside of discovery, connecting the Supplier Defendants to his employers. And, for that matter, the Supplier Defendants never engaged in defensive discovery—also typical in these cases.[88]

Those litigation decisions prevent Marcum from articulating a "colorable basis for predicting that [he] may recover against" the Supplier Defendants.[89] 3M invites the Court to scrutinize the attached state-court record.[90] Marcum's decision to ignore the Supplier Defendants means there is **_no_** evidence that either sold respirators to Marcum's mine employers. Nor is there evidence even suggesting a connection between Marcum or his mine employers, on the one hand, and either Supplier Defendant, on the other.

Only one reasonable inference follows: the Supplier Defendants were fraudulently joined to defeat federal jurisdiction. That conclusion is even stronger here than in _Bennett_. The plaintiffs in _Bennett_ at least asked the manufacturer (Ford) to produce communications with its dealers.[91] Unlike the Supplier Defendants (independent companies with no relationship to the Respirator Defendants), a captive authorized car dealer might have been expected to have some knowledge of potential

---

[88]   This is all true for Castle and McCoy, too.

[89]   _Chambers_, 796 F.3d at 564; _Casias_, 695 F.3d at 433 (alteration, internal quotation marks, and citation omitted).

[90]   Exhibit 1.

[91]   _Bennett_, 2007 WL 4561281, at *3.

19

defects in products that it sold. Yet the court still concluded the dealer was fraudulently joined because there was no meaningful effort to establish a colorable claim.[92] Following *Bennett,* the only reasonable conclusion on these stronger facts is that Marcum fraudulently joined the Supplier Defendants.

### 3. Marcum never tried to establish what the Supplier Defendants knew or should have known.

Marcum likewise failed to discover what the Supplier Defendants knew or should have known, another element critical to overcoming the Middleman statute and establishing a colorable claim.[93] The Complaint alleges the Supplier Defendants should have known from various scientific and industry publications that the respirators they allegedly sold were defective; but none of these actually says that the respirators were defective.[94]

Marcum never attempted to develop those allegations. He could have easily probed the Supplier Defendants' knowledge by deposing them (or their employees) and asking if they had reviewed any of the publications in the Complaint, or if they otherwise had reason to suspect that the respirators they allegedly sold were defective. Without evidence, he can't explain how local Eastern Kentucky companies selling mine equipment to local mines could reasonably be charged with notice of scientific and industry publications, let alone could infer from these publications that the federally certified respirators were defective.

---

[92]    *Id.*

[93]    KRS 411.340.

[94]    Complaint at ¶ 31. 3M denies these publications show its products were defective and that such a defect exists.

As with causation, Marcum made no attempt to establish his case. He has chosen not to develop proof to substantiate a claim that the Supplier Defendants knew or should have gleaned from the publications (which don't say the respirators were defective) that the federally certified respirators they allegedly sold were defective. This further shows he chose not to build a colorable claim against the Supplier Defendants.[95]

### C. Marcum's complete failure to pursue the Supplier Defendants is part of a broader pattern and practice of fraudulent joinder.

Marcum's case is not isolated. Castle, McCoy, and he are among thousands of respirator plaintiffs who have sued the same two Supplier Defendants. Those plaintiffs also have failed to pursue discovery against the Supplier Defendants. That pattern and practice further demonstrates the fraudulent joinder.

Marcum cannot distinguish his case from others where courts have found fraudulent joinder based on similar facts. As in *In re Zoloft* and *Long*, "numerous plaintiffs, including those represented by Plaintiffs' counsel," have had "the opportunity to prosecute claims against [the Supplier Defendants] and failed to do so."[96] Likewise, these "numerous" plaintiffs have not "propounded meaningful discovery on" the Supplier Defendants, including in other cases brought by Marcum's counsel.[97] And respirator plaintiffs frequently dismiss their claims against the Supplier Defendants

---

[95]    Castle and McCoy also have failed to develop any evidence against the Supplier Defendants.

[96]    *In re Zoloft*, 257 F. Supp. 3d at 721; *accord Long*, 2003 WL 25548421, at *2 ("To date, none of the nationwide diet drugs plaintiffs' counsel, including counsel for the [plaintiffs], have made any effort to prosecute a case against [the non-diverse defendant], other than naming [it] as [a] defendant[ ] .").

[97]    *In re Zoloft*, 257 F. Supp. 3d at 720. For example, 3M is attaching the lengthy docket sheets in *Hunt* and *Chapman*, two other cases brought by the same counsel on behalf of similarly-situated plaintiffs. Exhibits 9 and 10. There, too, no discovery was taken of (or by) the Supplier Defendants.

shortly before trial.[98] In the only trial where the Supplier Defendants hadn't already
been dismissed—almost certainly because the trial occurred within one year of the
complaint's filing—the plaintiff did not oppose KMSC's directed-verdict motion, and
argued to the jury that "MSC was at most one percent at fault."[99]

The Court recognized these "concern[ing]" practices in 2018. They have only
become more characteristic since that "fair warning."[100] The number of plaintiffs
making the same allegations against the Supplier Defendants, but never pursuing those
claims, has exploded.[101] With one exception, those plaintiffs have *all* sued the Supplier
Defendants.[102] Yet *none* of those thousands of plaintiffs—regardless of their counsel—
have pursued meaningful discovery concerning the Supplier Defendants.

This clear pattern and practice contextualizes the fraudulent joinder
demonstrated in this case. Marcum and his counsel were finished with the Supplier
Defendants from day one.

---

[98] *In re Zoloft*, 257 F. Supp. 3d at 720–21; *see Williams v. 3M Co.*, No. 7:18-cv-63-KKC,
2018 WL 3084710, at *6 (E.D. Ky. June 22, 2018) (discussing cases that have gone to
trials).

[99] *Williams*, 2018 WL 3084710, at *6 (discussing *Overbee v. 3M Co.*, No. 16-CI-313
(Knott Cir. Ct.)).

[100] Exhibit 4 at 32.

[101] *Compare* Exhibit 2 (Dec. 1, 2021; 2,217 plaintiffs), *with* Exhibit 3 (Jan. 1, 2018; 761
plaintiffs).

[102] *See Roark,* --- F. Supp. 3d ---, 2021 WL 5410887, at *5 (granting summary judgment
on the statute of limitations). Of the 2,200+ Kentucky plaintiffs with pending
respirator cases against 3M, Roark is the *only* where the Supplier Defendants were
not named.

4861-5200-6930, v. 1

### III.    Castle and McCoy also fraudulently joined the Supplier Defendants.

Castle's and McCoy's claims are no get-out-of-federal-court-free card for Marcum and their shared counsel. Like Marcum, they claim the Supplier Defendants are liable for negligence and strict liability.[103] Exactly like Marcum, they have fraudulently joined the Supplier Defendants.

Like Marcum, Castle and McCoy have not pursued discovery against the Supplier Defendants, even though they've had four years to do so. Despite their allegations that the Supplier Defendants knew, or should have known, about alleged defects based on the same list of decades-old publications, they have propounded no discovery to either Supplier Defendant. Their discovery responses are silent as to the names of any potential witnesses, and no witness has testified that their employers bought respirators from the Supplier Defendants. The *only* identified witnesses related to the Supplier Defendants were designated by the Supplier Defendants themselves, for Marcum's case.[104]

The similarities continue. McCoy and Castle each testified that they didn't know where their employers had purchased the respirators they say they used.[105] Like Marcum, each said he had no "documents that support [his] contention that he used any respirator that was supplied or furnished by" the Supplier Defendants.[106]

---

[103]    Complaint at ¶¶ 30-36.

[104]    Exhibit 5-W (KMSC and MSC witness disclosures).

[105]    McCoy Dep. 250:9-18; Castle Dep. 260:20-25.

[106]    Exhibit 5-X (McCoy's Oct. 21, 2019 Responses to Joint Requests for Production of Documents) at 13 (RFP no. 43); Exhibit 5-Y (Castle's Oct. 21, 2019 Responses to Joint Requests for Production of Documents) at 13 (RFP no. 43).

23

To show a colorable claim, McCoy and Castle should have used discovery to try to connect the Supplier Defendants to the respirators they say they wore, and to show how the Supplier Defendants knew, or should have known, about the alleged defect. They haven't. The same conclusion follows: McCoy and Castle—represented by the same counsel as Marcum, and joined in the same action—have fraudulently joined the Supplier Defendants.[107] As with Marcum, the Supplier Defendants served their one purpose for McCoy and Castle once the Complaint was filed.

Plaintiffs' counsel doubtless will respond that because fact discovery has not closed for McCoy and Castle, those Plaintiffs might yet use discovery to pursue a case against the Supplier Defendants. But that would ignore that courts do not "in the absence of any proof, assume that the [plaintiff] could or would prove the necessary facts" to negate fraudulent joinder.[108] Plaintiffs' counsel had that opportunity in Marcum's case, and they chose not to do anything to develop the claims. They have had the same opportunity, for over four years, to do it in McCoy's and Castle's cases, and haven't.

There is no objective reason to assume that McCoy's and Castle's cases are different from Marcum's, or from the demonstrated pattern and practice in hundreds of other cases that Plaintiffs' counsel have brought. That broader pattern and practice is to take no discovery against the Supplier Defendants. Plaintiffs' counsel cannot genuinely

---

[107]     *See In re Zoloft*, 257 F. Supp. 3d at 720-21; *Long*, 2003 WL 25548421, at *2.

[108]     *Badon*, 224 F.3d at 393-94 (emphasis and citation omitted).

4861-5200-6930, v. 1

say they intend to litigate McCoy's and Castle's claims differently. "[W]hat's happening with these suppliers" raises "an eyebrow" in McCoy's and Castle's cases, too.[109]

## IV.    Removal is timely.

Removal is timely. 3M now has "the solid and unambiguous information" that the Supplier Defendants have been fraudulently joined and removed within 30 days of securing that information.[110] The one-year limit either does not apply or, alternatively, the bad-faith exception to that time limit is satisfied.

### A.  Removal is timely under 28 U.S.C. § 1446(b)(3).

"The 30-day period [for removal] in § 1446(b)(1) starts to run only if the initial pleading contains solid and unambiguous information that the case is removable."[111] Otherwise, the defendant must file the notice of removal 'within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper' that contains solid and unambiguous information that the case is removable."[112]

3M received "solid and unambiguous" information when the last fact deposition occurred for Marcum's claims. At that point, Marcum could no longer build a colorable claim against the Supplier Defendants, consummating the fraudulent joinder.

The last fact deposition's transcript constituted an "other paper" under section 1446(b)(3). Although the Sixth Circuit has "yet to fully expound the meaning of 'other paper,'" the term is "'expansive' and includes 'a wide array of documents within its

---

[109]    Exhibit 4 at 32. 3M also intends to file a motion to sever Castle's and McCoy's claims into their own civil actions.

[110]    *Berera*, 779 F.3d at 364.

[111]    *Id.* (internal quotation marks and citation omitted).

[112]    *Id.* (quoting 28 U.S.C. § 1446(b)(3)).

4861-5200-6930, v. 1

scope.'"[113] "[V]arious discovery documents," including "deposition transcripts" may constitute 'other papers.'"[114] This broad definition furthers the "intent of § 1446(b)" to "make sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists."[115]

The last fact deposition was taken on February 22. Because 3M removed within 30 days afterward, removal was timely.[116]

**B. The one-year limit does not apply.**

Removals based on diversity jurisdiction are subject to an additional procedural hurdle, a one-year limit.[117] But that limit is inapplicable because the Supplier Defendants are fraudulently joined.

Some background is helpful. Congress added 28 U.S.C. § 1446(c)(1)'s one-year limitation in 1988.[118] Plaintiffs responded by using various tricks to defeat removal.

---

[113]   *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 365 (6th Cir. 2015) (quoting 14C Wright & Miller § 3731 (4th ed. 2009)).

[114]   *Id.* (quoting Wright & Miller § 3731 (4th ed. 2009)).

[115]   *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 466 (6th Cir. 2002); *see also Berera*, 779 F.3d at 365; *Joseph Daniel Hall & Mago Constr. Co., LLC v. Taylor*, No. 3:16-cv-84-GFVT, 2017 WL 66341, at *3 (E.D. Ky. Jan. 6, 2017) (discussing Sixth Circuit's "general willingness to allow deposition answers to constitute 'other paper'").

[116]   28 U.S.C. § 1446(b)(3). Whether the relevant date is the date of deposition itself or 3M's receipt of the transcript makes no difference as 3M removed within 30 days of each. *See Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 612 (5th Cir. 2018) (disagreeing with Tenth Circuit and adopting "bright-line rule" that "removal clock begins ticking upon receipt of the deposition transcript").

[117]   28 U.S.C. § 1446(c)(1) ("A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.").

[118]   Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, 102 Stat. 4642, sec. 1016.

Courts, including this one, did not condone these shenanigans. They recognized exceptions to the one-year limit when plaintiffs had, for example, fraudulently joined a non-diverse defendant.[119]

Congress also reacted. It found that the 1988 amendment had "led some plaintiffs to adopt removal-defeating strategies designed to keep the case in state court until after the 1-year deadline."[120] Responding to those practices in 2011, it amended section 1446(c), adding a bad-faith exception.[121]

When fraudulent joinder is shown, the one-year limitation does not apply. Even before Congress added the bad-faith exception, courts, including this one, regularly concluded "the one-year time limit on removing an action from state court does not apply when a plaintiff has fraudulently joined a non-diverse defendant."[122]

---

[119] *See, e.g.*, *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 427 (5th Cir. 2003) ("Strict application of the one-year limit would encourage plaintiffs to join nondiverse defendants for 366 days simply to avoid federal court, thereby undermining the very purpose of diversity jurisdiction."); *Estate of Morgan v. Cabela's, Inc.*, No. 09-91-GFVT, 2010 WL 11646777, at *4 (E.D. Ky. 2010) (concluding one-year limit inapplicable when plaintiff fraudulently joined non-diverse defendant).

[120] H.R. Rep. No. 112-10, at 15 (2011), *available at* https://www.govinfo.gov/content/pkg/CRPT-112hrpt10/pdf/CRPT-112hrpt10.pdf.

[121] Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, 125 Stat. 758, 760, sec. 103.

[122] *Estate of Morgan v. Cabela's, Inc.*, No. 09-91-GFVT, 2010 WL 11646777, at *4 (E.D. Ky. 2010); *Hardy*, 122 F. Supp. 2d at 759 (concluding one-year limitation "does not bar removal . . . *if* Plaintiffs fraudulently joined the nondiverse defendant"); *Bennett*, 2007 WL 4561281, at *2-3 ("[T]he one-year limitation of 28 U.S.C. § 1446(b) d[oes] not bar removal if the plaintiffs fraudulently joined the nondiverse defendant." (citing *Hardy*, 122 F. Supp. at 759)).

The 2011 amendment solidifies this conclusion.[123] As amended, section 1446(c) allows removal "on fraudulent joinder grounds even after [the action] has been pending in state court for more than one year."[124] As the Western District has noted, courts have "evaluated claims of bad faith under the [current] version of 28 U.S.C. § 1446(c) *by analyzing whether the non-diverse party was fraudulently joined or* was not dismissed to preclude timely removal."[125] Other district courts have reached similar conclusions.[126] Those decisions have clear application here. The Supplier Defendants were fraudulently joined, so the one-year limit does not apply.[127]

### C.  Even if the one-year limit applied, the proof of fraudulent joinder here also shows bad faith.

Even if the one-year limit applied when fraudulent joinder is shown, the proof of fraudulent joinder in this instance shows bad faith.[128]

---

[123]    *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1256 (D.N.M. 2014).

[124]    *Id.*

[125]    *Larue v. Volkswagen Grp. of Am., Inc.*, No. 1:17-cv-000001-GNS, 2017 WL 2312480, at *6 (W.D. Ky. May 26, 2017) (emphasis added).

[126]    *See, e.g.*, *McVey v. Anaplan, Inc.*, No. 19-cv-07770, 2020 WL 5253853, at *3 (N.D. Ill. Sept. 3, 2020) ("[T]here could certainly be scenarios where bad faith and fraudulent joinder are congruent, and proof of fraudulent joinder simultaneously satisfies the requirements for bad faith."); *Nele v. TJX Cos., Inc.*, No. 11-07643, 2013 WL 3305269, at *3 (E.D. Pa. July 1, 2013) ("'bad faith' can take the form of fraudulent joinder of a defendant to defeat diversity"); *see also Chesapeake & Ohio R.R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914) (fraudulent joinder shown where "joinder is without right and made in bad faith").

[127]    *See, e.g.*, *Estate of Morgan*, 2010 WL 11646777, at *4; *Bennett*, 2007 WL 4561281, at *2-3.

[128]    That is not to say that bad faith and fraudulent joinder are interchangeable, or that proof of bad faith depends on fraudulent joinder. "In theory, there are ways to establish bad faith without resorting to the fraudulent joinder doctrine." *McVey*, 2020 WL 5253853, at *3. And, as this Court has noted, "all district courts which have considered the issue appear to agree that the bad faith analysis is necessarily broader

### 1. The lack of serious efforts to build a case against non-diverse defendants shows bad faith.

When this Court last considered bad faith, in 2018's *Williams v. 3M Company*, it noted that the "Sixth Circuit has not addressed the meaning of bad faith in 28 U.S.C. § 1446(c)(1)."[129] That remains true.

But since *Williams*, at least one circuit has had the rare opportunity to consider what constitutes bad faith. In *Hoyt v. Lane Construction Company*, the Fifth Circuit affirmed a district court's bad-faith finding—and its reasoning points to the plaintiff's failure to develop claims against the non-diverse defendant as showing bad faith.[130]

In *Hoyt*, plaintiffs' trial witness list omitted fact witnesses from the non-diverse defendant, designated no witnesses who criticized the non-diverse defendant, and offered expert reports that referenced the non-diverse defendant just once.[131] After the plaintiffs voluntarily dismissed the non-diverse defendant just after the one-year limit, the remaining defendant removed.[132] Denying remand, the district court found plaintiffs had acted in bad faith.[133]

Affirming, the Fifth Circuit noted that the plaintiffs' "witness list for trial did not include any fact witnesses from [the non-diverse defendant]. And [their] expert witnesses made no serious efforts to establish [the non-diverse defendant's] liability."[134]

---

than the narrow colorable claim analysis applied by this Court in fraudulent joinder cases." *Williams*, 2018 WL 3084710, at *3 (citations omitted).

[129]   *Id.* at *3.

[130]   *Hoyt v. Lane Constr. Co.*, 927 F.3d 287, 292 (5th Cir. 2019).

[131]   *Id.*; Exhibit 11 (Aug. 3, 2018 Br. of Appellee, *Hoyt v. Lane Constr. Co.*), at 4-5.

[132]   *Hoyt*, 927 F.3d at 291-92.

[133]   *Id.*

[134]   *Id.*

4861-5200-6930, v. 1

This "suggest[ed]" the plaintiffs had kept the non-diverse defendant in the case for "one purpose and one purpose only—to prevent removal during § 1446(c)'s one-year removal period."[135] A key factor in finding bad faith was that the plaintiffs had made only "half-hearted[ ]" efforts to pursue a claim against the non-diverse defendant.[136] Marcum hasn't even done that.

### 2. This Court raised similar concerns in *Williams*, when it concluded the plaintiff had done "only the bare minimum" to justify remand.

In *Williams*, this Court emphasized that the evidence the plaintiff chooses to gather during discovery is key to evaluating whether "the plaintiff has acted in bad faith."[137] There, after reviewing that evidence, the Court found the plaintiff "ha[d] done only the bare minimum to actively litigate th[e] case" against the same Supplier Defendants—just barely "enough to avoid removal."[138]

The Court almost reached the opposite conclusion, though. Its order discussed its serious "concerns" that the plaintiff had acted in bad faith.[139] The order also described as "suspect" the plaintiff's "decision not to depose employees of the Supplier Defendants."[140] At argument on the motion to remand, the Court expressed deep "concern" that the main evidence against the Supplier Defendants had been developed

---

[135]   *Id*. at 292-93.

[136]   *Id*. at 292. Other factors also influenced the court's reasoning, including that the dismissal occurred soon after the one-year limit and that the plaintiffs received nothing in exchange. *Id*.

[137]   *Williams*, 2018 WL 3084710, at *5.

[138]   *Id*.

[139]   *Id*.

[140]   *Id*.

4861-5200-6930, v. 1

in a deposition of another of the plaintiff's lawyer's clients. The Court was generally "concern[ed]" with "what's happening with the suppliers" "as these cases develop."[141]

What particularly persuaded the *Williams* Court not to find bad faith was that the plaintiff had at least "deposed" a witness "within the discovery deadline and, by doing so, developed evidence that made a judgment or settlement with MSC more likely."[142] That witness (another of the plaintiff's lawyer's clients) "testified that he remembered that one of the mask suppliers was 'Mine Services.'"[143] The plaintiff's development of this deposition testimony narrowly justified remand.[144]

### 3. Plaintiffs have not done what this Court held was the "bare minimum" to justify remand.

Plaintiffs here, however, have not done even that "bare minimum."[145] As in *Hoyt*, Marcum's experts made no efforts "to establish liability"[146] against the Supplier Defendants. Unlike *Williams*, Plaintiffs haven't developed deposition testimony or other evidence that would make "a judgment or settlement with [either Supplier Defendant] more likely."[147]

---

[141]    *Id.*; Exhibit 4 at 19, 31–32.

[142]    *Williams*, 2018 WL 3084710, at *5.

[143]    *Id.*

[144]    *Id.*

[145]    *Id.*

[146]    *Hoyt*, 927 F.3d at 292-93; *see also Heller v. Am States Ins. Co.*, No. CV 15-9771 DMG, 2016 WL 1170891, at *3 (C.D. Cal. Mar. 25, 2016) (finding bad faith because, among other reasons, plaintiff "never served any written discovery . . . designed to elicit evidence in support of his claims").

[147]    *Williams*, 2018 WL 3084710, at *5.

4861-5200-6930, v. 1

Plaintiffs, and their counsel, have also not attempted to develop even the scant evidence that persuaded this Court to remand *Williams*.[148] Plaintiffs never served discovery on the Supplier Defendants. Plaintiffs never sought to depose them or their employees. And Plaintiffs never disclosed witnesses (fact or expert) to testify against them. These failures are the evidence of bad faith, missing from *Williams*, that the Court sought "to validate [its] concerns and justify removal based on bad faith."[149]

It's hard to say what more evidence a removing defendant could possibly muster. "Since it would be extraordinary for a party directly to admit a 'bad faith' intention, his motive must of necessity be ascertained from circumstantial evidence."[150] Short of an outright admission, it's difficult to imagine how else to prove bad faith.

But a confession of bad faith is "extraordinary,"[151] and limiting the bad-faith exception to when the plaintiffs' lawyer candidly (and extraordinarily) provides direct evidence of bad faith would defeat the exception's purpose. Congress recognized that some litigants and their lawyers join and keep in-state defendants only to defeat removal.[152] It can't be that the only way to show bad faith is for the plaintiff to admit it.

---

[148]    *Id.*

[149]    *Id.*

[150]    *Cont'l Ins. Co. v. N.L.R.B.*, 495 F.2d 44, 48 (2d Cir. 1974).

[151]    *Id.*

[152]    28 U.S.C. § 1446(c)(1).

4861-5200-6930, v. 1

**4. The Court need not determine whether Plaintiffs' actions are intentional conduct or a failure to actively litigate.**

In *Williams*, this Court grouped other courts' decisions as requiring either "intentional conduct" or a failure to "actively litigate" to show bad faith.[153] It concluded in that case that there wasn't *quite* enough proof, under either standard, to avoid remand.[154] Here, the Court doesn't need to choose. Plaintiffs have not attempted the "bare minimum" that justified remand in *Williams*. The Court should find Plaintiffs have acted in bad faith.

Plaintiffs and their counsel have spent multiple years and substantial resources pursuing their claims against 3M. Marcum, for example, participated in 10 depositions, propounded 22 interrogatories and 28 requests for production, and submitted 18 requests for admissions.[155] He designated seven hired experts.[156] Yet *none* of this discovery addressed the Supplier Defendants, let alone sought to connect them to Marcum's mine employers or show how he could overcome Middleman immunity. Marcum has vigorously pursued his claims against 3M, while abandoning his claims against the Supplier Defendants.

A recent example is telling. When neither 3M's counsel nor the Supplier Defendants' counsel logged in to a virtual expert deposition (due to a time zone error),

---

[153] *See Williams*, 2018 WL 3084710, at *3-4 (in the absence of circuit guidance, district courts have developed standards, asking "whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court" or whether "the plaintiff actively litigated its case against the removal spoiler in state court" (emphasis, internal quotation marks, and citations omitted)).

[154] *Id.* at 4.

[155] *See* Exhibit 5-Z (Marcum's Jan. 5, 2022 Interrogatories, Requests for Production, and Requests for Admission to 3M).

[156] *See* Exhibit 5-AA (Marcum's expert disclosures).

4861-5200-6930, v. 1

Plaintiffs' counsel reached out only to 3M's attorney. It apparently did not occur to him to contact the Supplier Defendants' counsel, or wonder where he was, because the Supplier Defendants are not relevant to the case. Eventually, the Supplier Defendants' lawyer logged in mid-deposition.[157]

All of this is both "intentional conduct" and a failure to "actively litigate." The only conclusion is that the Supplier Defendants were joined and kept in this case in bad faith to defeat removal.

* * *

There is only one plausible explanation for why Plaintiffs here have sued the same two Supplier Defendants as thousands of other Kentucky respirator plaintiffs—and why *all* of those plaintiffs have utterly failed to develop a case against the Supplier Defendants. On day one, the Supplier Defendants fulfilled their sole purpose: keeping cases out of federal court. After that, they are extraneous. That is fraudulent joinder and bad faith.

## V.    MSA's failure to consent is immaterial.

On paper at least, Plaintiffs have claims remaining against two Respirator Defendants, 3M and MSA. Although MSA hasn't consented to removal, that failure does not block removal, because MSA is, at most, a nominal defendant.[158]

---

[157]    Exhibit 12 (Excerpts from Feb. 22, 2022 Deposition of James Johnson), at 39:20-40:21.

[158]    The following argument assumes that MSA will affirmatively withhold consent, but that has not happened yet. 3M's counsel has contacted MSA's counsel, and there has been no objection to removal.

### A. Defendants who settle, or agree with plaintiffs not to consent to removal, aren't "properly joined" defendants.

Removal requires the consent of all "*properly* joined defendants."[159] A party is not a defendant, though, if the plaintiff no longer has a live claim against it. That is particularly true where two parties have reached a settlement agreement, which moots the plaintiff's claims because "there is nothing left for the plaintiff[ ] to win."[160] At most, a settling defendant is a nominal party, whose consent is unnecessary for removal,[161] because it "lack[s] a palpable interest in the outcome of [the] case."[162] This rule "helps to preserve the adversity that is central to our system of justice."[163] "Determining nominal party status is a practical inquiry, focused on the particular facts and circumstances of a case . . . ."[164]

---

[159]   *Chambers*, 796 F.3d at 564; *see also Home Depot*, 139 S. Ct. at 1747-50 (discussing meaning of "defendant" as used in removal statutes).

[160]   *Pettrey v. Enter. Title Ag., Inc.*, 584 F.3d 701, 703 (6th Cir. 2009) (citation omitted). This is equally true under Kentucky law. "Simply put, a settlement renders all that came before it moot." *McCarty v. Estate of Minning*, No. 2013-ca-001943-MR, 2016 WL 7742201, at *2 (Ky. Ct. App. Jan. 13, 2016) (citing *Ky. Utils. v. Steenman*, 141 S.W.2d 265, 269 (1940)); *see also Bailey v. Preserve Rural Roads of Madison Cty., Inc.*, 394 S.W.3d 350, 355 (Ky. 2011) ("To have standing to sue, one must have a judicially cognizable interest in the subject matter of the suit [that is not] remote and speculative [but is] present and substantial." (internal quotation marks and citation omitted)).

[161]   *E.g.*, *Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 542-44 (8th Cir. 2015); *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 379 (5th Cir. 2006).

[162]   *Ledwell v. Ravenel*, 843 F. App'x 506, 507 (4th Cir. 2021) (internal quotation marks omitted; quoting *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259 (4th Cir. 2013)).

[163]   *Hartford Fire*, 736 F.3d at 262.

[164]   *Id.* at 260-61.

4861-5200-6930, v. 1

Similarly, where a defendant has entered a non-removal agreement with the plaintiff's counsel, that defendant's consent is not required for removal.[165] "[C]ircumstantial evidence" of such agreements can include a defendant's "[f]ailure to consent to removal . . . even in those jurisdictions. . . which are well known for their high verdicts for plaintiffs against corporate defendants."[166] This type of agreement, where the plaintiff agrees to "ultimately dismiss [the defendant] in exchange for [the defendant's] refusal to consent to removal,"[167] also implicates mootness. As with a traditional settlement agreement, a non-removal agreement would show that the plaintiff has "nothing left. . . to win"[168] and therefore lacks a "live" claim against that defendant.[169]

Although Plaintiffs continue to have claims against MSA on paper, they do not have a live controversy with MSA. Plaintiffs' counsel represented, on the record in open court, that Marcum's case "doesn't involve MSA."[170] Counsel said that, even though Marcum, Castle, and McCoy make claims against MSA; all three say they frequently used MSA's products. And Marcum and MSA have submitted an agreed order, voluntarily dismissing Marcum's claims against MSA with prejudice.[171] Given counsel's

---

[165]    *In re Diet Drugs*, 220 F. Supp. 2d at 422.

[166]    *Id.*

[167]    *Id.* at 421.

[168]    *Pettrey*, 584 F.3d at 703.

[169]    *Mokdad v. Sessions*, 876 F.3d 167, 170 (6th Cir. 2017).

[170]    Exhibit 13 (Video Transcript of Dec. 3, 2021 Hearing in Pike Circuit Court), beginning at 15:45. MSA's counsel says MSA couldn't participate in a March trial, and Plaintiffs' counsel represents that the *Marcum* case "doesn't involve MSA." (16:25).

[171]    Exhibit 5-O.

36

representation, and this agreed order, MSA lacks any "palpable interest" in this case's outcome, so it is at most a nominal defendant, whose consent is unnecessary.[172]

Moreover, on information and belief, Plaintiffs' counsel has reached an undisclosed settlement or other non-removal agreement with MSA. That undisclosed settlement or other non-removal agreement also moots any controversy that Plaintiffs have with MSA, and/or shows that Plaintiffs lack a colorable claim against MSA.[173] Accordingly, for these additional reasons, MSA is no longer properly considered a defendant to this action; at most, it is a nominal "defendant" whose consent is unnecessary.

3M offers the following evidence as the basis for this informed allegation:

- Plaintiffs' counsel's representation in open court that this case "doesn't involve MSA."[174]
- MSA stopped attending depositions noticed for this case.[175]
- Plaintiffs' counsel did not disclose experts opining about MSA's respirators for Marcum's case, even though Marcum says he wore MSA's respirators for much of his career and has claims against MSA, at least on paper.[176]
- Plaintiffs' counsel's hired respirator expert, James Johnson, recently testified that he would not be a designated witness in cases where MSA is a party; he has been an expert witness for MSA for decades.[177]

---

[172]   *See Ledwell*, 843 F. App'x at 507; *Brooks*, 779 F.3d at 542-44; *Pettrey*, 584 F.3d at 703; *Harleysville Mut. Ins. Co.*, 736 F.3d at 259.

[173]   *See Pettrey*, 584 F.3d at 703 (settlement moots claims).

[174]   *See* Exhibit 13 at 16:25.

[175]   *See, e.g.*, Exhibit 14 (Excerpts from Feb. 22, 2022 Deposition of Ricky Bowen), at pp. 1-2 (showing MSA's counsel did not appear).

[176]   Exhibit 5-AA; Exhibit 5-BB (Marcum's June 1, 2020 Verified Answers to Joint Interrogatories), at Ex. B (wore MSA products at least part of time from 1979 to 1993).

[177]   Exhibit 12 (Excerpts from Feb. 22, 2022 Deposition of James Johnson), at 10:9-12:18.

- Plaintiffs' counsel has consistently pressed cases primarily or solely involving 3M, while not pursuing similar cases involving MSA.
- MSA's failure to consent is suspect under any objective review of the circumstances: state courts in Eastern Kentucky are "well known for their high verdicts for plaintiffs against corporate defendants."[178] MSA is no stranger to that reality; one Knott County plaintiff won an $8 million jury verdict against MSA in 2016.[179] By contrast, this Court has consistently dismissed the claims of plaintiffs like Marcum, Castle, and McCoy, based on the statute of limitations.[180] "[C]ommon sense" shows that MSA's failure to consent to removal strongly suggests some sort of anti-removal agreement, making MSA "merely [a] nominal part[y]."[181]

3M believes that Plaintiffs' counsel has reached an understanding with MSA anticipating the resolution of their entire inventory of MSA cases, and that this understanding includes an overt or a tacit agreement that MSA will refuse to consent to removals. If that is not the situation, then counsel for those parties can represent that to the Court, under Rule 11. Any failure to do so would be telling.

## VI.    3M has satisfied the other technical requirements for removal.

This removal meets the technical requirements of service and notice. As explained, the consent of neither the Supplier Defendants nor MSA is required to remove.[182] The state court record is attached as Exhibit 1 to this notice.[183] And 3M will

---

[178]    *In re Diet Drugs*, 220 F. Supp. 2d at 422.

[179]    No. 10-CI-155 (Knott Circuit Court). WYMT, Knott County man awarded 8-million-dollar judgment in dust mask lawsuit, https://www.wymt.com/content/news/Knott-County-man-awarded-8-million-dollar-judgment-in-dust-mask-lawsuit--370562261.html (last accessed March 4, 2022).

[180]    *See* Roark, --- F. Supp. 3d ---, 2021 WL 5410887, at *5; *Adams*, 2013 WL 3367134, at *6; *Boggs*, 2012 WL 3644967, at *2-7.

[181]    *Id.*

[182]    *E.g.*, *Chambers*, 796 F.3d at 564; *Harleysville Mut. Ins. Co.*, 736 F.3d at 259.

[183]    28 U.S.C. § 1446(a).

file a written notice of this removal in Martin Circuit Court. 3M will attach this notice as an exhibit to the state court filing and provide written notice of this removal to Plaintiffs.

* * *

3M gives notice that the above-styled action is removed from the Martin Circuit Court to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville. Plaintiffs are notified to proceed no further in state court.

<u>**CERTIFICATE**</u>

This is to certify that on March 4, 2022, there was served upon the Clerk of the Martin Circuit Court a copy of the Notice of Removal of this action, then pending in the Martin Circuit Court, in which said action was designated as *Robert Castle, et al. v. 3M Company, et al.*, Martin Circuit Court, 17-CI-00199, to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville.

Respectfully submitted,

THOMPSON MILLER & SIMPSON PLC

*/s/ Byron N. Miller*
Byron N. Miller
Michael J. Bender
734 West Main Street, Suite 400
Louisville, KY 40202
Telephone: (502) 585-9900
Facsimile: (502) 585-9993
bmiller@tmslawplc.com
mbender@tmslawplc.com
mhess@tmslawplc.com
mhendricks@tmslawplc.com

And

4861-5200-6930, v. 1

Bryant J. Spann
Robert H. Akers
THOMAS COMBS & SPANN
300 Summers Street, Suite 1380
Charlestown, WV 25301
Telephone: (304) 414-1800
Facsimile: (304) 414-1801
BSpann@tcspllc.com
RAkers@tcspllc.com
JBrowne@tcspllc.com
LGibson@tcspllc.com

*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed this 4th day of March 2022 through the operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A true and correct copy of the foregoing was also mailed and / or served via electronic mail to the following:

| | |
|---|---|
| Matthew C. Minner<br>Brian M. Vines<br>Minner Vines Moncus<br>325 West Main Street, Suite 210<br>Lexington, KY 40507<br>matt@mvmlaw.com<br>brian@mvmlaw.com<br>sandy@mvmlaw.com<br>tonja@mvmlaw.com<br>*Counsel for Plaintiffs* | Jason Earley<br>Scott A. Powell<br>Christopher S. Randolph, Jr.<br>Tempe D. Smith<br>Hare, Wynn, Newell and Newton, LLP<br>2025 3rd Avenue N., Suite 800<br>Birmingham, AL 35203<br>Jason@hwnn.com<br>Scott@hwnn.com<br>Chris@hwnn.com<br>Tempe@hwnn.com<br>Laura@hwnn.com<br>*Counsel for Plaintiffs* |
| Todd W. Burris<br>Law Office of Todd W. Burris, PLLC<br>PNC Bank Tower<br>301 E. Main Street, Suite 1000-A<br>Lexington, KY 40507<br>todd@toddwburrislaw.com<br>*Counsel for Plaintiffs* | D. Tyler Roberts<br>Roberts Law Office, PLLC<br>PNC Bank Tower<br>301 E Main Street, Suite 1000-C<br>Lexington, KY 40507<br>troberts@rloky.com<br>*Counsel for Plaintiffs* |
| Joseph Lambert<br>Lambert & Lambert, PLLC | M. Trent Spurlock<br>Alice A. Jones |

| | |
|---|---|
| P.O. Box 989<br>Mt. Vernon, KY 40456<br>lambertjos@gmail.com<br>*Counsel for Plaintiffs* | Dinsmore & Shohl, LLP<br>101 South Fifth Street, Suite 2500<br>Louisville, KY 40202<br>Trent.Spurlock@Dinsmore.com<br>Alice.Jones@Dinsmore.com<br>Brenda.Goodhue@Dinsmore.com<br>*Counsel for Defendant Mine Safety Appliances Company* |
| Charles J. Baird<br>David L. Baird<br>Baird & Baird, PSC<br>162 Second Street<br>P.O. Box 351<br>Pikeville, KY 41502<br>cbaird@bairdandbaird.com<br>dbaird@bairdandbaird.com<br>*Counsel for Defendant Mine Safety Appliances Company* | Patrick W. Gault<br>Napier Gault Schupbach & Stevens PLC<br>730 West Main Street, Suite 400<br>Louisville, KY 40202<br>pgault@napiergaultlaw.com<br>abury@napiergaultlaw.com<br>*Counsel for Defendants Mine Service Company, Inc. and Kentucky Mine Supply Company* |

*/s/ Byron N. Miller*
*Counsel for Defendant 3M Company*

4861-5200-6930, v. 1